UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHAWN MURPHY,

                    Plaintiff,

v.                                                          Case No. 20-cv-22-pp

T. KLUGE, M. HILLE,
J. MUENCHOW, C. O'DONNELL
and WISCONSIN DEPARTMENT OF CORRECTIONS,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

Shawn Murphy, an inmate at the Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 10, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $1.05. Dkt. No. 7. The court received that fee on March 13, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff names five defendants: (1) T. Kluge, who works in the business office at Waupun Correctional Institution; (2) M. Hille, financial program supervisor at Waupun; (3) J. Muenchow, institution complaint examiner at Waupun; (4) C. O'Donnell, who works for the Wisconsin Department of Corrections' Office of the Secretary; and (5) the Wisconsin Department of Corrections. Dkt. No. 1 at 1-2.

The plaintiff alleges that in December 2000, he was sentenced to twenty-five years of probation. Id. at 2. He says that in 2012, he made "some mistakes"

and his new probation officer, Ms. Heerly, "jumped" to revoke him. Id. at 2, 4. According to the plaintiff, Heerly believed that he should have gone to prison for his criminal case, State of Wisconsin v. Shawn Murphy, Case Number 2000-CF-156. Id. at 4.

Next, the plaintiff alleges that he has a computer system set up at Waupun to help him with his impairments and disabilities. Id. He says that his learning disorders impair his major life activities. Id. at 5. The plaintiff states:

> I bring this up because there is another case 16-cv-1462 at Eastern District court about the DOC and some staff violating my civil rights ADA and right to court access just like the DOC and other staff are doing to stop me from showing DCC probation supervisor violated due process and equal protection of the law given by the U.S. Constitution and Bill of Rights because of personal/emotional problems with me.

Id.

The plaintiff goes on to explain the circumstances leading up to the revocation of his probation. He alleges that on July 8, 2013, he ended up at the St. Joseph's Hospital Emergency Room because Ms. Heerly and his "PO agent" were trying to force him to maintain a job even though he had a disability. Id. at 6. An ER doctor allegedly gave the plaintiff narcotic "psy med's," a social worker used "psychological method" to help him gain control of his anger at probation and tried for placement at a "1/3 house." Id. The plaintiff says that the next morning, the cops came and placed him in custody at the Washington County Jail on a probation hold. Id. He states that his PO told him it had been alleged that he made verbal threats, acted belligerently and used profanity toward crisis workers, and had engaged in controlling and harassing behavior.

Id. The plaintiff contends that he did not know what she was talking about and that these allegations were mostly lies. Id.

The plaintiff says that at his revocation hearing, the ALJ determined that the Department had not met its burden to prove "allegation seven." Id. According to the plaintiff, this statement about burden led his attorney "to do an 809.32 no merit." Id. at 7. The plaintiff says that, because he was revoked, his attorney believed that "allegation seven" could be used to increase his sentence. Id. at 7-8. He alleges that the sentencing court illegally increased his sentence by using the inaccurate information, and the court relied on false information to sentence him to twenty years. Id. at 8. The plaintiff states that the Wisconsin Court of Appeals did not identify this error, though the plaintiff covered it as best he could in response to the no-merit brief. Id.

The plaintiff alleges that on February 1, 2017, he tried to file a rule 794.06 petition for writ of *habeas corpus* with the Wisconsin Court of Appeals based on ineffective assistance of counsel. Id. at 9. He states that, because of a "technical error," his filing papers were not accepted, and the Wisconsin Court of Appeals denied his petition on May 25, 2017. Id. The plaintiff says that the error was an "actual injury" given the fact that he has impairments, "so at the time of filing of the petition 2-1-2107 I had no meaningful access to the law library (see case 16-cv-1462-PP) in your court." Id.

The plaintiff alleges that defendants Muenchow and O'Donnell did not investigate facts alleged in an inmate complaint, in contravention of their

5

responsibility under the Wisconsin Administrative Code. Id. at 10. He says that his rights to court access were violated again. Id.

For relief, the plaintiff seeks a declaratory judgment that the defendants deliberately harmed him, an injunction forcing prison authorities to give him meaningful access to the courts, nominal damages and punitive damages. In support of his request for punitive damages, the plaintiff states:

> The facts show the defendants were motivated to hurt me, on purpose, to block my civil rights given in Bill of Rights, 1st, 5th and 14th Amendments, which give me due process and equal protection of law. So I sit on an illegal sentence in prison, the defendants only try to stop my court access because they know the due process violation in the sentencing after revocation 2013 will show the DOC had me put in prison, [Ms.] Heerly made up 2013 DOC-414 revocation and after 6 years of suffering loss of my due process and equal protection of the law, fighting severe impairment to show facts, which now I can do.

Id. at 10-11.

C. Analysis

Prisoners have a due process right to access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). To state an access-to-the-courts claim, a prisoner must show that the alleged interference caused actual injury:

> The requirement that prisoners making access-to-courts claims allege specific prejudice should not be understood as an onerous fact-pleading burden; it is simply a requirement that a prisoner's complaint spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions.

Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). The complaint must "'allow the court to determine at the outset of the litigation, before costly

6

Case 2:20-cv-00022-PP   Filed 04/30/20   Page 6 of 11   Document 11

responsibility under the Wisconsin Administrative Code. Id. at 10. He says that his rights to court access were violated again. Id.

For relief, the plaintiff seeks a declaratory judgment that the defendants deliberately harmed him, an injunction forcing prison authorities to give him meaningful access to the courts, nominal damages and punitive damages. In support of his request for punitive damages, the plaintiff states:

> The facts show the defendants were motivated to hurt me, on purpose, to block my civil rights given in Bill of Rights, 1st, 5th and 14th Amendments, which give me due process and equal protection of law. So I sit on an illegal sentence in prison, the defendants only try to stop my court access because they know the due process violation in the sentencing after revocation 2013 will show the DOC had me put in prison, [Ms.] Heerly made up 2013 DOC-414 revocation and after 6 years of suffering loss of my due process and equal protection of the law, fighting severe impairment to show facts, which now I can do.

Id. at 10-11.

C. Analysis

Prisoners have a due process right to access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). To state an access-to-the-courts claim, a prisoner must show that the alleged interference caused actual injury:

> The requirement that prisoners making access-to-courts claims allege specific prejudice should not be understood as an onerous fact-pleading burden; it is simply a requirement that a prisoner's complaint spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions.

Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). The complaint must "'allow the court to determine at the outset of the litigation, before costly

discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit,' and . . . place the defendants on notice of the plaintiff's claim so that they can begin to prepare their defense." Pratt v. Tarr, 464 F.3d 730, 733 (7th Cir. 2006) (quoting Ryan v. Mary Immaculate Queen Ctr., 188 F.3d 857, 860 (7th Cir. 1999)).

The plaintiff alleges that upon revocation of his probation, the sentencing court illegally considered inaccurate information from "allegation seven" to sentence him to twenty years. The plaintiff alleges that he did not have meaningful court access, which resulted in the Wisconsin Court of Appeals' dismissal of his *habeas* petition on a technical error.

In Murphy v. Kamphuis, Case No. 16-cv-1462-PP (E.D. Wis.), the plaintiff raised an access-to-the-courts claim related to the same probation revocation proceedings. In that case, the plaintiff argued that the March 30, 2015 thirty-day blanket denial of his ability to obtain a legal loan prevented him from filing a petition for review with the Wisconsin Supreme Court. Murphy, 16-cv-1462, Dkt. No. 108 at 34. The plaintiff stated that he had until April 23, 2015 to file his petition and that the misguided suspension of his legal loan prevented him from doing so, that the judge sentenced him to prison on "probation lies" and that he remained in prison, and that the "actual injury was not getting to file the petition" about the State lying in the revocation summary given to the sentencing court. Id. at 34-35. At summary judgment, this court determined that while the thirty-day legal loan suspension could have prevented the plaintiff from timely filing a petition for review with the Wisconsin Supreme

7

Court, the plaintiff could not show that he suffered an "actual injury" based on the defendants' actions. Id. at 35. The court explained, in part:

> After the plaintiff's appointed appellate counsel filed a no-merit report under Wis. Stat. Rule 809.32, the court of appeals concluded that "the judgment may be summarily affirmed because there is no arguable merit to any issue that could be raised on appeal." Dkt. No. 77-2 at 1-2. The court's opinion describes that in 2000, the plaintiff was convicted of first-degree sexual assault of a child after entering a guilty plea to the allegation that he had sexual contact with his stepdaughter. Id. at 2. At sentencing, the plaintiff was placed on probation for twenty-five years and in 2013, his probation was revoked. Id. He was sentenced to twelve years' initial confinement and eight years' extended supervision with 1,542 days of sentence credit. Id. The court of appeals explained that "an appeal from a sentencing after revocation is limited to issues raised by the events of the resentencing hearing and the judgment entered as a result of that sentencing hearing; the appeal does not bring the original judgment of conviction before the court." Id. The court stated that the no-merit report discussed the sentencing court's exercise of discretion and "[w]e agree with the report's conclusion that there is no arguable merit to a claim that the court erroneously exercised its discretion at sentencing or imposed a sentence that was excessive." Id.
>
> Next, the court of appeals addressed the fact that the revocation summary provided to the sentencing court listed eight alleged violations of the conditions of probation, but at the revocation hearing the administrative law judge found three of the allegations unfounded. Id. *The court determined that no issue of arguable merit arose from including the unproven probation violations in the revocation summary because the plaintiff's attorney had informed the court that the three allegations were not proven at the revocation hearing and because, just as the sentencing court may consider unproven offenses at sentencing, it may consider unproven allegations of probation violations. Id. at 2-3.* The court of appeals also addressed the plaintiff's contention that his sentencing counsel was ineffective for not objecting to information in the revocation summary that was given during sex offender treatment group or to his agent as part of his sex offender treatment requirements. Id. at 3.
>
> …

8

> To establish an "actual injury," the plaintiff needs to present evidence demonstrating that he was prevented from pursuing a nonfrivolous, or potentially meritorious, legal action. See Harbury, 536 U.S. at 414-15; Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009). The plaintiff claims that the State lied to the judge and made up evidence, and that the defendants' preventing him from filing his petition "is actual injury." Dkt. No. 81 at 33. But the court of appeals thoroughly addressed the plaintiff's arguments and found that there was no arguable merit to any issue the plaintiff could raise on appeal, and the plaintiff has not presented proof that his claim has merit. See Love v. Scaife, 586 F. App'x 234, 236 (7th Cir. 2014) (at summary judgment, plaintiff compelled to present evidence that could convince a trier of fact that his post-conviction appeal raised arguable issues). The plaintiff's access-to-the-courts claim fails because he has not shown that the alleged lack of access caused him actual injury. See id. (citing Lewis, 518 U.S. at 349); see also Harbury, 536 U.S. at 416 ("[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."). The court will grant the defendants' motion for summary judgment, and deny the plaintiff's motion as to his access to the courts claim.

Id. at 35-36, 38-39 (emphasis added).

In this case, the complaint does not allege that any defendant hindered the plaintiff's ability to pursue a legitimate challenge to his sentence. Based on the attachments to the plaintiff's complaint, the court perceives that he takes issue with defendant Kluge's failure to give him a legal loan to file a petition addressing the sentencing after revocation in his criminal case. Dkt. No. 1-1 at 3-4. But given the Wisconsin Court of Appeals' decision that there was no merit to a claim that the plaintiff was sentenced based on inaccurate information, as well as this court's decision on the plaintiff's access-to-the-courts claim regarding the sentencing (albeit on a different ground), the court cannot conclude that the plaintiff has any tenable theory or basis of suit.

9

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the **$348.95** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of

judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**